MAILED TO COUNSEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
MICHAEL FREEMAN,                    :        09 Civ. 4087 (LAP)
                                    :        02 Cr. 150 (LAP)
                Petitioner,         :
                                    :        OPINION AND ORDER
        - v. -                      :
                                    :
UNITED STATES OF AMERICA,           :
                                    :
                Respondent.         :
------------------------------------x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 10/13/10

LORETTA A. PRESKA, Chief United States District Judge:

    On or around March 24, 2009,[1] Defendant Michael Freeman
filed a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or
Correct Sentence By A Person In Federal Custody" (the "First
Petition") [dkt. no. 1].[2]  On April 5, 2010, Freeman filed a
second petition styled as a motion to "Request Permission to
Amend Pending Section 2255 Beyond Statute Limitation" (the
"Second Petition") [dkt. no. 4].  Both motions are DENIED in
their entirety.

                            BACKGROUND

    Michael Freeman was charged in a five count indictment with
conspiring to distribute and possess with intent to distribute
marijuana; conspiring to commit Hobbs Act robbery; using,

---

[1]    Freeman's First Petition and "Michael Freeman's Addendun
[sic] to His 28 U.S.C. Section 2255 Motion" are dated March 24,
2009.  The motion and addendum were received by the Pro Se
Office of the Southern District of New York on April 2, 2009.
[2]    Unless otherwise stated, docket numbers refer to the docket
for No. 09-cv-4087.

possessing and carrying a firearm during and in relation to a
crime of violence or a drug trafficking crime (Counts One, Two,
and Three, respectively), and two counts of committing murder
with a firearm during and in relation to a crime of violence or
drug trafficking crime (Counts Four and Five). (See Superseding
Indictment, S4 02 Cr. 150 (LAP), dated October 5, 2004 (the
"Indictment" or "Ind.") [dkt. no. 145].) The jury returned a
verdict of guilty on Counts One, Two, and Three, and acquitted
on Counts Four and Five. Judgment was entered on September 27,
2005, and was timely appealed. The Court of Appeals affirmed
the conviction on November 14, 2007. See United States v.
Johnson, 507 F.3d 793 (2d Cir. 2007), cert. denied, 552 U.S.
1301 (2008).

In his First Petition, Freeman provided two separate
grounds for review. First, he questioned "whether the district
court's imposition of a life sentence is an excessive sentence?"
(First Petition at 5.) The attached addendum to the First
Petition provided an expanded recitation of Ground One and its
factual basis. (First Petition at 14.) In the addendum,
Freeman specifies that the life sentence on the conviction for
Count Three is excessive. (Id.) Freeman recites the procedural
history and sentencing for each count but provides no facts
relating to the use and possession of a firearm during a crime
of violence, 18 U.S.C. § 924(c)(1)(A)(iii), the offense charged

2

in Count Three.  (Id.)  Freeman asserts only that the "District
Court's imposition of a life sentence is unconstitutional . . ."
(Id.)  Ground Two of Freeman's First Petition claims that the
"grand jury returned a fatally defective 4th superseding
indictment."  (First Petition at 6.)  There are no supporting
facts listed for Ground Two other than the word "Reserved."
(Id.)  Freeman checked the boxes indicating that neither issue
was raised on direct appeal or in post-conviction proceedings.
(Id. at 5-7.)

In his Second Petition, Freeman asserts that Counts One and
Two of the Indictment are multiplicitous and violate the Fifth
Amendment's Double Jeopardy Clause and that Count Two contains
two separate offenses and is thus duplicitous.  (Second Petition
at 6-12.)  Freeman also challenges the admissibility of several
inculpatory statements that he made to law enforcement officers
while receiving medical care after the robbery and shootings.
(Id. at 13-14.)  Freeman further claims that the jury
instructions on Counts Two and Three were flawed.  (Id. at 15-
17.)  Finally, Freeman asserts that his trial counsel was
ineffective because he failed to challenge the "defective
indictment," failed to argue that the Government could not
satisfy the interstate commerce element of Count Two, and did
not object during sentencing when the district court considered
Freeman's role in the two murders committed during the robbery

despite the acquittal on those counts.  (Id. at 5-6, 14-15, 17-21.)

## APPLICABLE LAW

### Statute of Limitations and Relation Back to the First Petition

Section 2255 requires that a motion making a collateral attack be made within one year of the date upon which a conviction becomes final, unless the movant can show a governmental impediment to timely making such a motion, a newly-recognized right or rule of law made retroactively applicable to cases on collateral review, or newly-discovered facts which could not have been discovered through the exercise of due diligence.  See 28 U.S.C. § 2255(f) (2006).  A pro se petition is deemed filed the date the inmate delivers it to the prison officials for transmittal to the court.  Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001).

When an amendment to a timely-filed petition is made after the limitation period has expired, the amendment is valid only if it relates back to the timely petition pursuant to Rule 15 of the FRCP.  Mayle v. Felix, 545 U.S. 644, 650 (2005) (relation back under FED. R. CIV. P. 15 applies to habeas corpus proceedings).  Under Rule 15, an amendment to a pleading relates back to the date of the original pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out

4

— in the original pleading . . ." FED. R. CIV. P. 15(c)(1)(B).
The Supreme Court has held that an amended petition relates back
only if "the original and amended petitions state claims that
are tied to a common core of operative facts . . ." Mayle, 545
U.S. at 664.  By contrast, an amended habeas petition does not
relate back "when it asserts a new ground for relief supported
by facts that differ in both time and type from those the
original pleading set forth." Id. at 650.  Further, the
original petition must provide fair notice of the claims, and
conclusory claims will not provide the necessary notice for
relation back purposes.  Baldwin County Welcome Center v. Brown,
466 U.S. 147, 149 n.3 (1984).

### Procedural Default

     When a defendant has procedurally defaulted on a claim by
failing to raise it on direct review, "he is barred from raising
the claim in a subsequent § 2255 proceeding unless he can
establish both cause for the procedural default and actual
prejudice resulting therefrom or that he is 'actually innocent'
of the crime of which he was convicted." DeJesus v. United
States, 161 F.3d 99, 102 (2d Cir. 1998) (citing Bousley v.
United States, 523 U.S. 614, 622 (1998); see also Wainwright v.
Sykes, 433 U.S. 72, 87 (1977); Campino v. United States, 968
F.2d 187, 190 (2d Cir. 1992) ("It is generally accepted that a
procedural default of even a constitutional issue will bar

review under § 2255, unless the defendant can meet the 'cause and prejudice' test.").

Cause for the purpose of a procedural default "turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts . . ." Murray v. Carrier, 477 U.S. 478, 488 (1986). For example, showings that "the factual or legal basis for a claim was not reasonably available to counsel" or the presence of "interference by officials" are grounds for cause under this standard. Id. To demonstrate prejudice, the defendant must show that "the degree of prejudice" resulting from the error, evaluated in the context of the entire trial, "infected the entire trial [such] that the resulting conviction violates due process . . ." United States v. Frady, 456 U.S. 152, 169 (1982). To establish actual innocence, a defendant must demonstrate that in light of all the evidence "'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995).

### Ineffective Assistance of Counsel

To prevail on a Sixth Amendment claim for ineffective assistance of counsel, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" judged by "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688 (1984). A defendant

6

must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Moreover, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

The Supreme Court instructs reviewing courts to use "every effort . . . to eliminate the distorting effects of hindsight" when assessing attorney performance and to "evaluate the conduct from counsel's perspective at the time." Id. at 689. Courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

## DISCUSSION

### Claims That Counts One and Two Were Multiplicitous, Count Two Was Duplicitous, the Jury Instructions Were Faulty, and Counsel Was Ineffective Do Not Relate Back and Are Untimely

Freeman claims in his Second Petition that Counts One and Two charge him with the same offense, are multiplicitous, and thus violate the Double Jeopardy Clause of the Fifth Amendment. (See Second Petition at 6-12.) Freeman's Second Petition was filed on April 5, 2010, just over two years after his conviction became final when the Supreme Court denied certiorari on March

7

31, 2008.  This claim does not relate back to the First Petition and is time barred.

The multiplicity claim is raised for the first time in Freeman's Second Petition.  He did not raise it before or during trial, on appeal, or in his first, timely-filed habeas petition. Freeman has not asserted any government imposition to timely filing, creation of some retroactively applicable and newly-recognized right or rule of law, or new facts which ordinary diligence could not have uncovered earlier.  See 28 U.S.C. § 2255(f).  Thus, the claims put forth in the Second Petition, styled an amendment by Freeman, will only be timely if they relate back to the First Petition, timely filed on or around March 24, 2009.  See FED. R. CIV. P. 15(c)(1)(B); Ching v. United States, 298 F.3d 174, 181 (2d Cir. 2002) ("Under Rule 15(c), an amendment is timely if it "relates back" to the original habeas motion."); Mayle, 545 U.S. at 650.

In his First Petition, Freeman claims that the indictment was fatally defective but did not substantiate the claim with any facts or explain how the indictment was defective.  (See First Petition at 6.)  Freeman specified that he did not raise the issue on appeal because "the case law is silent on the issue.  It's a novel, first impression issue."  (Id.)  Neither statement regarding the indictment made in the First Petition states a claim that is tied to the multiplicity argument by a

8

"common core of operative facts." Mayle, 545 U.S. at 664.
Freeman provides no factual basis for his claim that the
indictment is defective and writes only "reserved" in the space
for supporting facts.  (First Petition at 6.)  Moreover, the
case law is not silent on multiplicity issues in indictments,
and it is thus difficult to construe Freeman's statement in the
First Petition to include the multiplicity argument.  See, e.g.,
United States v. Sturdivant, 244 F.3d 71, 76 (2d Cir. 2001).

    There are simply no facts or statements alleged in the
First Petition to which the multiplicity argument can relate
back.  While the Federal Rules do not require a claimant to "set
forth an intricately detailed description of the asserted basis
for relief," the original pleading must provide "fair notice of
what the plaintiff's claim is and the grounds upon which it
rests" if Freeman's new claim is to relate back under Fed. R.
Civ. P. 15(c).  Baldwin County Welcome Center v. Brown, 466 U.S.
147, 149 n.3 (1984) (internal citation omitted).  Thus, the
multiplicity argument raised for the first time in the Second
Petition does not relate back and is not timely.

    While equitable tolling is available in some cases, it
would be unavailable here even if Freeman had demanded it.
Green v. United States, 260 F.3d 78 (2d Cir. 2001) (equitable
tolling applies to § 2255 motions).  A petitioner must show "(1)
that he has been pursuing his rights diligently, and (2) that

some extraordinary circumstance stood in his way" in order to warrant equitable tolling. Diaz v. Kelly, 515 F.3d 149, 153 (2d Cir. 2008) (internal citations omitted).  Regardless of Freeman's diligence in pursuing his habeas rights, there is no evidence that any "extraordinary circumstance" has prevented the timely filing of the arguments contained within the Second Petition.  Only a narrow band of circumstances can justify a grant of equitable tolling including "a corrections officer's intentional confiscation of a prisoner's petition shortly before the filing deadline; an attorney's egregious failure to file a habeas petition on a prisoner's behalf despite explicit directions from his client to do so; and a state appellate court's failure to inform a prisoner that leave to appeal was denied."  Rivera v. United States, 2010 WL 2351477, at *3 (D. Conn. 2010) (internal citations omitted).  Freeman here asserts no more than the everyday operation of the penal system as a reason for delay.

In his Second Petition, Freeman also contends that Count Two is duplicitous "because under the Hobbs Act he is charged both for robbery and attempted gunpoint robbery."  (Second Petition at 11.)  For the same reasons as Freeman's multiplicity argument, the duplicity argument raised in the Second Petition does not relate back to the original habeas petition.  There is no "common core of operative facts" to which the new claim can

10

relate.  Mayle, 545 U.S. at 664.  Freeman's First Petition

provides no facts or other statements that could be construed to

provide notice of the claim that Count Two of the indictment is

duplicitous.  See Mayle, 545 U.S. at 650; Baldwin County Welcome

Center, 466 U.S. at 149 n.3.  Equitable tolling is likewise

inapplicable.  Freeman cannot assert any "extraordinary

circumstance" as to why the duplicity argument could not have

been raised earlier.  Diaz, 515 F.3d at 153.  Therefore, the

duplicity argument raised for the first time in the Second

Petition is not timely.

Freeman also claims that the jury instructions provided for

both Counts Two and Three were improper.  (Second Petition at

15-17.)  Specifically, Freeman claims that the jury instruction

for Count Two "impermissibly removed the interstate commerce

element of the Hobbs Act."  (Second Petition at 15.)  He also

claims that the jury instruction for Count Three did not track

the statute with its use of the words "in furtherance of" and

thus "criminalizes two separate offenses."  (Second Petition at

17.)  For the same reasons as Freeman's multiplicity and

duplicity arguments above, the argument that the jury

instructions were incorrect for these two specific Counts does

not relate back to the original habeas petition.  There is

nothing in the First Petition that references an issue with the

jury instructions.  Mayle, 545 U.S. at 664.  Again, there is no

11

circumstance beyond the ordinary that would warrant any tolling of the statutory limitations period.  Diaz, 515 F.3d at 153. Therefore, the jury instruction claims raised in the Second Petition do not relate back to the First Petition and are not timely.

Finally, Freeman asserts, in his Second Petition, that he received ineffective assistance of counsel.  First, Freeman claims that counsel was ineffective in refraining from challenging the indictment.  (Second Petition at 6.)  He then claims that his counsel was ineffective because he failed to argue that the interstate commerce element of the Hobbs Act offense was not met.  (Id. at 14.)  He also claims that counsel was ineffective because of his "failure to challenge the [sentencing] enhancement for 'felony murder.'"  (Id. at 20.) The ineffective assistance of counsel claims are time-barred because they were raised for the first time in the Second Petition and do not relate back to the First Petition.  The only mention of counsel in the First Petition occurs when Freeman explains that he did not appeal the imposition of a life sentence as excessive because "[c]ounsel failed to raise the issue."  (First Petition at 5.)  Freeman makes no mention of the sentencing enhancement or the interstate commerce element of Count Two anywhere in the First Petition, the two grounds now asserted as the basis for Freeman's ineffective assistance

12

claim.  Mayle, 545 U.S. at 664.    Thus, the claim is barred.

Furthermore, Freeman has not proved any justification for

tolling the deadline.

### Claims That Counts One and Two Were Multiplicitous, Count Two Was Duplicitous, and the Jury Instructions Were Faulty Are Procedurally Barred

Even if the First Petition were to be construed to render

the multiplicity claim timely (or equitably tolled), the

argument was waived and is procedurally barred.  A challenge to

the indictment itself must be brought before the trial, or

objections to the indictment are generally deemed to be waived.

See Fed. R. Crim. P. 12(b)(3)(B) ("The following must be raised

before trial: . . . (B) a motion alleging a defect in the

indictment or information . . .").  The first time this

challenge to the indictment itself was raised is in a habeas

petition.  (See First Petition at 6.)

In the Second Circuit, objections to indictments must

generally be raised before trial.  United States v. Murray, 618

F.2d 892, 899 n.8 (2d Cir. 1980) ("Under Fed. R. Crim. P.

12(b)(2) [currently Fed. R. Crim. P. 12(b)(3)], objections based

on defects in the indictment must be raised prior to trial.").

The exception to this rule applies only when the defect is not

apparent on the face of the indictment or does not become

apparent until the proceedings are underway.  Sturdivant, 244

F.3d at 76 (There is no waiver "where the claimed defect in the

13

indictment was not apparent on its face at the institution of the proceeding.").

Freeman, however, does not assert that the multiplicity defect only became apparent after trial had begun or even later. Freeman claims that the fault in the indictment is "best exhibited in the language of the indictment" and "the only distinction" is the statutes cited in Counts One and Two. (Second Petition at 9.)  Since the defect was, by Freeman's own petition, apparent on the face of the indictment, "[f]ailure to make the appropriate motion is a waiver."  United States v. Viserto, 596 F.2d 531, 538 (2d Cir. 1979).  Thus, the claim that Counts One and Two are multiplicitous was waived.[3]

Further, even if the duplicity argument raised in the Second Petition were timely, the argument was waived and is

---

[3]   Following Freeman's allegations of multiplicity in the Second Petition, he claims that "Movant's inculpatory Statements Must Yield To The Double Jeopardy Clause."  Second Petition at 13.  It is unclear precisely what Freeman asserts as a justification for suppressing some of his inculpatory statements.  He cites only Texas v. Cobb, 532 U.S. 162 (2001), and Blockburger v. United States, 284 U.S. 299 (1932) to support his claim and avers that because the "indictment [is] fatally defective," the statements must be suppressed.  Freeman concludes that "statements addued on three seperate occasions by police must yeild to a double jeopardy violation herein, now inadmissable."  Second Petition at 14 (typographical errors in original).  It is unclear as to which statements Freeman refers or how they relate to any count in the indictment.  In light of the findings that the claims questioning the validity of the indictment were waived, the Court need not consider the argument surrounding Freeman's inculpatory statements.  Moreover, as they were not raised in the First Petition, they would be untimely as they would not relate back to the original filing.

14

procedurally barred for the same reasons as the multiplicity claim.  The claim is procedurally barred because it was not raised before or during trial or on appeal.  See Fed. R. Crim. P. 12(b)(3)(B); Murray, 618 F.2d at 899 n.8.  Freeman uses the precise language of the indictment to challenge Count Two as duplicitous.  (See Second Petition at 11-12.)  Therefore, he cannot now argue that the claim is saved because it was not apparent on the face of the indictment.  Viserto, 596 F.2d at 538 ("Since the alleged duplicitous character of the counts appears on the face of the indictment, appellants could have moved before trial to dismiss the indictment.  Failure to make the appropriate motion is a waiver.").  Moreover, Freeman cannot show any objective cause or prejudice as to why this claim was not raised at trial or on appeal and does not assert that he is actually innocent.  See DeJesus, 161 F.3d at 102.  The claim that Count Two is duplicitous, raised for the first time in the Second Petition, was waived.[4]

---

[4]     Considered on its own, ground two of the First Petition that "[t]he grand jury returned a fatally defective 4th superseding indictment" does not provide any specificity as is required in a habeas petition.  See Mayle, 545 U.S. at 655 ("Habeas Corpus Rule 2(c) is more demanding [than in ordinary civil proceedings].  It provides that the petition must 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'").  Freeman's First Petition, on this ground, provides no notice as to what the claim against the indictment could be, and does not state the facts necessary to make a determination as to the validity of the indictment.  Moreover, it is well- (cont'd on next page)

Finally even if the argument that the jury instructions were improper, raised in the Second Petition, were timely, the argument was waived and is procedurally barred because it was not raised on appeal. See United States v. Johnson, 507 F.3d 793, 795 (2d Cir. 2007) ("On appeal, Freeman makes two principal arguments: (1) that the District Court erred in admitting a redacted version of his confession; and (2) that the District Court erred in sentencing him to a term of life imprisonment based on the acquitted conduct."). On appeal, Freeman did argue that the District Court "failed to give certain jury instructions with respect to the discharge enhancement provided for in 18 U.S.C. § 924(c)." Id. at 798 n.6. However, Freeman provides no justification for why he did not bring the challenges to the jury instructions that he now brings in his Second Petition at the same time as he made the separate objection to jury instructions on appeal.

Freeman does not offer any newly discovered evidence or other objective cause as to why these claims were not raised when he objected on appeal to a jury instruction on different grounds. DeJesus, 161 F.3d at 102. Likewise, he provides no

_____

(cont'd) established that a claim that an indictment is defective must be brought before, or in extenuating situations, during or after trial. See FED. R. CRIM. P. 12(b)(3)(B); Murray, 618 F.2d at 899 n.8. This is especially true where Freeman's only claimed issues with the indictment, as evidenced by his Second Petition, are on the face of the indictment.

showing of prejudice or actual innocence.  Id.  The claims
surrounding the allegedly erroneous jury instructions are
procedurally barred because they were not raised on appeal.

### Counsel Was Not Ineffective

As noted above, Freeman makes several claims of ineffective
assistance of counsel in his Second Petition.  (See Second
Petition at 6, 14, 20)  Even if the claims could be considered
timely by use of the passing reference to counsel in the First
Petition, the ineffective assistance claim would fail on the
merits.[5]  To begin, Freeman must show that his attorney's conduct
"fell below an objective standard of reasonableness" judged by
"prevailing professional norms."  Strickland, 466 U.S. at 688.
Where counsel provided "reasonably effective assistance" to the
defendant, a conviction will not be overturned.  Id. at 687.
Furthermore, either actions or omissions by counsel that "might
be considered sound trial strategy" do not constitute
ineffective assistance.  Id. at 689 (internal citation omitted).
Second, even if Freeman could show that his representation was
not within the realm of reasonableness, he must show prejudice

---

[5]     As a threshold matter, although Freeman did not raise his
claims of ineffective assistance of counsel on direct appeal,
they are not procedurally barred. See Massaro v. United States,
538 U.S. 500, 504 (2003) ("We hold that an ineffective-
assistance-of-counsel claim may be brought in a collateral
proceeding under § 2255, whether or not the petitioner could
have raised the claim on direct appeal.").

such that there is a reasonable probability that "the result of the proceeding would have been different." Id. at 694.

First, Freeman claims that "counsel's failure to challenge 'defective indictment,' now deem as duplicitious [sic] and multiplictious [sic] constitutes gross negligence for ineffective assistance of counsel." (Second Petition at 6.) Freeman does not expand on this bald assertion of ineffectiveness of his counsel, nor did he claim the indictment was defective at trial or on appeal. Since "the defendant must show that counsel's representation fell below an objective standard of reasonableness," the claim that trial counsel should have challenged the indictment is without merit. Strickland, 466 U.S. at 688. Freeman offers no additional facts as to why his counsel should have challenged the indictment. It was objectively reasonable for counsel to refrain from challenging the indictment as such a challenge was extremely unlikely to be successful.

Under the Blockburger test, the multiplicity issue now raised by Freeman in his Second Petition would have been futile. See Blockburger v. United States, 284 U.S. 299, 306 (1932). When two separate statutes are violated based on the same general conduct, the Blockburger test asks "whether each offense contains an element not contained in the other." United States v. Dixon, 509 U.S. 688, 696 (1993). If counsel had claimed that

18

Counts One and Two are multiplicitous, as Freeman now does, such
an argument would have been frivolous.  Count One charges a
conspiracy to "distribute and possess with intent to distribute
a controlled substance."  (Indictment at 1.)  Count Two charges
a conspiracy to "commit robbery" in violation of the Hobbs Act.
(Id. at 2.)  While both counts were conspiracies, they each
contained elements not present in the other.  It was objectively
reasonable for counsel to refrain from challenging the
indictment at trial.

It would likewise have been futile for counsel to have
challenged Count Two as duplicitous.  Freeman claimed that the
charge contained the offense of conspiring to "commit robbery"
and "attempted gunpoint robbery."  (Id. at 2-3.)  It is
impermissible to combine two or more distinct crimes into one
count if the defendant is prejudiced thereby.  See Sturdivant,
244 F.3d at 75.  However, the phrase "attempted gunpoint
robbery" of which Freeman complains appears in after the "to
wit" clause which describes the specific conduct underlying the
charge.  Indictment at 2-3.  The "attempted gunpoint robbery" in
Count Two was not listed as a separate crime.  See Dzinchveladze
v. United States, No. 06-cv-9415, 2007 WL 549439, at *10
(S.D.N.Y. Feb. 21, 2007) (count was not constitutionally infirm
when it "tracked the language of the statute, included all of
the necessary elements of the charged offense, specified the

19

time and place of the crime, and explained the nature and
substance of the charged fraudulent scheme in the 'to wit'
clause."). Thus, counsel's refusal to challenge the indictment
on duplicity grounds was not objectively unreasonable and was
within the realm of "prevailing professional norms."
Strickland, 466 U.S. at 688.

Freeman also claims that his attorney should have argued
that the interstate commerce element of Count Two was not
satisfied. (Second Petition at 14.) Counsel's refusal to
challenge the government on this point can be "considered sound
trial strategy." Strickland, 466 U.S. at 689. The Government
had two cooperating witnesses who testified to the fact that the
marijuana Freeman attempted to steal had been transported across
state lines, (Tr. 103-04 (testimony of Peter Woodbine)), and
further could not even have been grown in New York, (Tr. 319-20
(testimony of Rockefellow Johnson)).

The government's evidence satisfied the interstate commerce
element of the Hobbs Act. See 18 U.S.C. § 1951 (2006).
Counsel's objection to the government's ability to meet the
commerce element would have been frivolous in light of the
supporting evidence and could have been damaging to his
credibility and trial strategy. In light of the uncontroverted
evidence on the interstate commerce element, it is highly
unlikely that "the result of the proceeding would have been

20

different" had Freeman's counsel argued against its sufficiency.
Strickland, 466 U.S. at 694. Therefore, counsel was not
ineffective with respect to this ground produced in the Second
Petition.

Freeman also claims that trial counsel was ineffective in
failing to challenge the use of the acquitted murders in
sentencing. (Second Petition at 20.) This claim is entirely
without merit because Freeman's counsel did argue against the
Court's use of the acquitted conduct in sentencing. (See
9/12/05 Sentencing Transcript at 10-11 (argument of trial
counsel disputing the use of the murders in sentencing).)
Moreover, this argument was also made on appeal. In affirming
Freeman's conviction, the Second Circuit held that 18 U.S.C. §
924(c) authorized life imprisonment as a maximum sentence and
that the ten-year mandatory minimum was applicable in Freeman's
case due to the discharge of his firearms, resulting in the
death of two individuals. Johnson, 507 F.3d at 797-99. The
Second Circuit explicitly rejected Freeman's argument that
sentencing could not take into account the acquitted conduct.
Johnson, 507 F.3d at 797 ("Freeman next argues that the District
Court erred in cross-referencing the murder Guideline during
sentencing and imposing a life sentence based upon the acquitted
murder conduct. However, we have previously established that
district courts may find facts relevant to sentencing-as opposed

21

to elements of the offense-by a preponderance of the evidence
and in so doing may take into account acquitted conduct when
sentencing defendants."). Freeman cannot now claim that either
his trial or appellate counsel were ineffective on this point
because the sentencing enhancement was argued by counsel at both
the trial sentencing and on appeal.

### Imposition of Life Sentence on Count Three Has Already Been Raised on Direct Appeal

The first ground presented in Freeman's First Petition is
listed in greater detail in his addendum: "Whether the district
court's imposition of a life sentence on Count Three, charging a
violation of 18 U.S.C. § 924(c)(1)(iii), is an excessive
sentence in violation of the Federal Constitution and the
Statute's maximum penalty itself." (First Petition at 14.)
Freeman's essential claim is that the statute does not authorize
a life sentence.

Contrary to Freeman's claim, it is well-established "that a
§ 2255 petition cannot be used to relitigate questions which
were raised and considered on direct appeal." United States v.
Pitcher, 559 F.3d 120, 123 (2d Cir. 2009) (internal citation
omitted). It is true that a "claim is not barred from being
brought in a § 2255 motion where it rests upon a different legal
'ground' for relief than the one previously raised." Id.
However, the Second Circuit has already rejected the same

essential claim presented by Freeman in his First Petition. Johnson, 507 F.3d at 798-99 ("[T]he maximum available sentence under § 924(c)(1)(A) is life imprisonment.  Accordingly, the District Court did not violate [the] prohibition against imposing a sentence that exceeded the maximum allowed by statute.").  Freeman does not specify in his First Petition why he thinks the Constitution is violated by the imposition of a life sentence on Count Three.  Regardless, the Second Circuit has already approved of the life sentence on Count Three on direct appeal, and Freeman cannot relitigate the issue in his habeas petition.  Pitcher, 559 F.3d at 123.

### CONCLUSION

For the foregoing reasons, Freeman's motion to correct, vacate and/or set aside his sentence and conviction is DENIED [dkt. no. 1].  Freeman's motion to amend his original Section 2255 motion is DENIED [dkt. no. 4].

SO ORDERED:

DATED:    New York, New York
          October _13_, 2010

_Loretta A. Presta_
LORETTA A. PRESKA, Chief U.S.D.J.