```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
UNITED STATES OF AMERICA,      :        02-cr-150 (LAP)
                               :
                               :
            v.                 :        ORDER
                               :
MICHAEL FREEMAN,               :
                               :
            Defendant.         :
-------------------------------x
```

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant Michael Freeman's motion pursuant to 18 U.S.C. § 3582(c)(1)(A) for compassionate release. (Dkt. no. 259.)  The Government opposed the motion.  (Dkt. no. 264.)  For the reasons set forth below, the motion is denied.

    I.   **Background**

    Defendant conspired with others to rob a marijuana stash house in the Bronx in January 2002.  During the robbery, Defendant used one of the two handguns he was carrying to shoot and kill two people, Joseph McLaughlin, one of the victims of the robbery, and Derrick Newman, one of Defendant's co-conspirators.

    On January 26, 2002, after they had arranged for a purported purchase of marijuana, Defendant and two co-conspirators, Derrick Newman and Adrian Cole, went to a stash house located on Adee Avenue in the Bronx, where they had arranged to meet the sellers.  Defendant and his co-conspirators planned to rob the sellers of a large quantity of marijuana.

1

The conspirators brought a bag of fake cash to the robbery, and Defendant was armed with two handguns, a .357 Magnum Colt revolver and a 9mm semiautomatic.

After they arrived at the stash house, Defendant and Newman went inside with the sellers. Defendant was shown a brick of marijuana. He then pulled out the .357 Magnum revolver and announced the robbery. One of the individuals who had brokered the sale, Joseph McLaughlin, jumped on Defendant and tried to disarm him. As the two men fought, Defendant shot McLaughlin twice, fatally striking him in the chest and groin. Across the room, Newman fought with another of the sellers. Newman called for Freeman to "get him off of me," and Defendant aimed the revolver in Newman's direction and fired. Rather than hitting the seller, Defendant struck Newman and fatally wounded him in his chest, lungs, and heart.

The sellers eventually disarmed Defendant of the revolver, but Defendant then pulled out a second gun, the 9mm semiautomatic. Freeman fired another two rounds with this gun, sending one bullet into the apartment below the stash house. Defendant was wounded in an exchange of gunfire after the sellers used his revolver against him.

Defendant was arrested the day of the robbery and shootings. In a post-arrest statement, Defendant admitted that he had previously committed three similar robberies, during which guns were brandished and drugs and/or money was stolen.

Defendant was indicted for his participation in the January 2002 drug robbery that caused deaths of McLaughlin and Newman. A five-count superseding indictment charged him with (1) conspiring to distribute 40 kilograms and more of marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(D) and 846; (2) attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951; (3) carrying and using a firearm during the commission of the marijuana trafficking conspiracy and the attempted robbery, in violation of 18 U.S.C. § 924(c); (4) murdering Joseph McLaughlin, in violation of 18 U.S.C. § 924(j)(1); and (5) murdering Derrick Newman, in violation of 18 U.S.C. § 924(j)(1).  After a trial, Defendant was convicted of the marijuana trafficking conspiracy, the attempted robbery, and carrying and using a firearm during those offenses.  He was acquitted of murder charges for the deaths of McLaughlin and Newman.

At sentencing, the Court found that, notwithstanding the acquittal on the murder charges, "[t]he defendant carried two loaded firearms, which he used during the robbery to shoot and kill two people."  (Sent. Tr. [dkt. no. 181], at 19.)  The Court also noted that "the elements of the crimes of conviction make out the elements of felony murder." (Id. at 18.)  Accordingly, the robbery and murder cross-references from the sentencing Guidelines applied; the Defendant's offense level was 43; and

his Guidelines sentence was life imprisonment.  (See id. at 19-20.)

After considering the Section 3553(a) factors, the Court found "a life sentence is a reasonable sentence in this case." (Id. at 41.)  In particular, the Court noted that "only a life sentence" would serve "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  (Id. at 37-38.)  The Court also found a life sentence was necessary to protect the public from a defendant that had engaged in numerous armed robberies of drug dealers and that the sentence was warranted given "the defendant's obvious lack of remorse."  (Id. at 39)

Defendant has now been in custody for approximately 20 years of his life sentence.

## II.  The Defendant's Motion

Defendant filed a request for compassionate release with the Bureau of Prisons on September 8, 2020.  The request was denied on September 21, 2020.

On February 18, 2021, Defendant filed a motion seeking compassionate release.  (Motion for Compassionate Release, dated February 18, 2021 [dkt. no. 259].)  Defendant's motion argues that extraordinary and compelling circumstances exist to grant compassionate release because of his good conduct in prison and because he "has had to endure extremely harsh conditions during Covid 'lockdowns.'"  (Id. at 6.)  Regarding the Section 3553(a)

4

factors, Defendant argues a sentence of time served would be sufficient based on Freeman's relatively minor prior criminal history and because "[i]f 19 years does not deter a man from committing more crime, nothing will." (Id. at 9.)

### III. Applicable Law

Under 18 U.S.C. § 3582, as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed," except that:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission, prior to the First Step Act's amendment of Section 3582, had promulgated a policy statement on compassionate release, U.S.S.G. § 1B1.13. The Court of Appeals, however, has construed this policy statement as applicable only to compassionate release motions brought by the BOP, not those brought by defendants. See United States v. Brooker, 976 F.3d 228, 234-36 (2d Cir. 2020).

5

Thus, in instances such as this, involving a motion brought by the defendant rather than by BOP, there are three prerequisites for granting a compassionate release motion. First, the defendant must have exhausted his administrative rights. See 18 U.S.C. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant" a reduction of sentence. Id. § 3582(c)(1)(A)(i). And third, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). Id. § 3582(c)(1)(A). As movant, the defendant bears the burden of proving that he is entitled to the requested relief under Section 3582. United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction." (cleaned up)).

**IV. Discussion**

As to the first factor, the Government does not dispute that Defendant has exhausted his administrative remedies.

In arguing for compassionate release, Defendant relies on his purported rehabilitation and the harsh conditions of the COVID-19 pandemic. Defendant argues that he has a good BOP work history and has submitted letters showing that he has been employed in UNICOR factories since 2010 or 2011, where he has performed well. (Exhibits D, E, and F [dkt. no. 259].) The Government points out that Defendant has been disciplined for fighting three times while in BOP custody, although not since

2009.  (Dkt. no. 264 at 4.)  While Defendant has done well during his incarceration, for which he is to be commended, this record does not constitute exceptional and compelling circumstances warranting release.

With respect to the harsh conditions imposed on prisoners due to the COVID-19 pandemic, everyone in the world, not just prisoners, has been impacted adversely by the virus.  So Defendant's argument applies to all prisoners in state and federal custody; he has not proffered any reason why he has been particularly impacted or is at particular risk because of the pandemic.  See United States v. Kurti, No. 02 Cr. 1014 (LAP), 2021 WL 2823562, at *3 (S.D.N.Y. July 7, 2021) ("Defendant has not proffered any reason why he is more at risk from COVID-19 than any other inmate.  He bases his motion on his lack of complete control over all of the circumstances of his living conditions.  That lack of control is applicable to any inmate and thus cannot constitute 'extraordinary and compelling circumstances warranting release' under the statute.").  Thus, whether considered separately or together, Defendant's rehabilitation and the effect of the COVID-19 pandemic do not constitute "extraordinary and compelling circumstances meriting release."

Even if the facts proffered by Defendant were sufficient under Section 3582(c)(1)(A), the Section 3553(a) factors counsel against release.  As noted above, this Defendant committed

7

numerous armed robberies of drug dealers.  During the robbery in question in January of 2022, he brought two loaded handguns into the apartment where the marijuana was stashed and ultimately shot and killed two people during that robbery.  Although Freeman was acquitted on the murder charges, the Court noted at sentencing that "the elements of the crimes of conviction make out the elements of felony murder." (Sent. Tr. at 18).  Because it found that he had killed two others during the robbery, the Court applied the murder cross reference from the sentencing Guidelines, a decision that was affirmed on appeal.  See United States v. Freeman, 507 F.3d 793, 797-99 (2d Cir. 2007).  As a result, Defendant faced a ten-year statutory minimum sentence, and his Guidelines sentence was life imprisonment.  The Court found the Guidelines sentence was the appropriate sentence in this case.

As noted above, at sentencing, the Court found that "a life sentence is a reasonable sentence in this case," (Sent. Tr. at 41), and that "only a life sentence" would serve "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" (id. at 37-38.)  The Court also found a life sentence was necessary to protect the public from a defendant who had engaged in numerous armed robberies of drug dealers and that the sentence was warranted given "the defendant's obvious lack of remorse."  (Id. at 39.)  Nothing has changed since the time of sentencing.  Joseph

8

McLaughlin and Derrick Newman are dead because the Defendant shot and killed them during a botched drug robbery.  To grant Defendant's motion and release him now, after he has served only about 20 years in custody, would result in a sentence that fails "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

V.  **Conclusion**

For the reasons set forth above, Defendant Michael Freeman's motion pursuant to 18 U.S.C. § 3582(c)(1)(A) for compassionate release (dkt. no. 259) is denied.

The Clerk of the Court shall mark the motion (dkt. no. 259) as closed and mail a copy of this order to Defendant.

**SO ORDERED.**

Dated:   New York, New York
         June 1, 2022

*Loretta A. Preska*
———————————————
LORETTA A. PRESKA
SENIOR UNITED STATES DISTRICT JUDGE